May it please the court. My name is David Anthony. I represent the appellant Edward Finley. I would like to reserve two minutes for rebuttal if I may. You may. What I'd like to do is I'd like to start this case by going in reverse order, which is I'd like to start at the end and I'd like to work backwards. One of the arguments that Mr. Finley has raised in this appeal is whether the prosecutor committed misconduct during closing argument. It's our position that the comments that were made by the prosecutor deprived Mr. Finley of his presumption of innocence and that they rendered his trial fundamentally unfair. As a little bit of a background, the investigation in this case began because Mr. Finley approached the authorities and informed them that a gentleman named Willie Lewis, who was the ex-boyfriend of his girlfriend, had molested his daughter. Because of that information, the police interviewed the child victim witness. They obtained information from her that Mr. Lewis had molested her, but they also obtained information from her that Mr. Finley had molested her. What was the basis for his going after Willie? Was it kind of because he thought that he was going to be charged and he wanted to have his own ammunition? This seems very odd. Well, Your Honor, that was certainly a live issue at trial. And it was a hot contest between the prosecutor and the defense as to whether or not Mr. Finley had set up Mr. Lewis or whether or not he actually was a suspect in the offense. The way that this played out was the prosecutor tried to address this argument in her rebuttal. And the way that she addressed the argument in her rebuttal was she began by using the position of the prosecutor's office to argue that the prosecutor only prosecutes people who are guilty and that they don't prosecute people who are innocent. But hadn't the victim testified that or told the investigators that Willie had nothing to do with it, that the only person she identified as molesting her was Mr. Finley? Well, it depends on which interview of the child victim we're referring to. I'm referring to the first interview of the child victim. That was the interview with Detective Scott. Let me ask the question a different way. What evidence is there in the record that Willie had actually molested her other than Finley's accusation? The evidence that we have in the record is the statement that the child victim witness initially gave to the police. The other evidence would be her testimony at the preliminary hearing where she testifies that she did, in fact, tell the detectives that Mr. Lewis was an individual that had molested her. Based on that. Counsel, even if that's true, all of that was presented to the jury and the jury nevertheless convicted Mr. Finley. That's true, Your Honor. So why is habeas relief warranted? We believe that habeas relief is warranted because if you look at the prosecutor's arguments, when we have a close case like this where there's a back and forth, it's our contention that the arguments made by the prosecutor using the position of her office and expressing personal opinion could have made the difference to the jury. Counsel, we've got a finding by the Nevada appellate courts in response to this argument that there was no misconduct, that it was in essence a fair response to the defendant's closing. Don't we have to give deference to that finding on federal habeas review? I think that there are two responses to that, Your Honor. First of all, if you look at the Nevada Supreme Court's opinion on direct appeal, they do mention the argument about the prosecutor expressing personal opinion and making this argument about how the prosecutor only prosecutes guilty people. If you look in the text of their subsequent statements, it appears that the only issue of prosecutorial misconduct that they address is the one that's related to the other bad acts. They specifically address the issue of whether it was misconduct for the prosecutor to talk about the Mr. Finley's drug use in closing argument and referring to him as a crackhead. I don't necessarily see them dealing with that argument the way that the Court's suggesting, which is saying that it was an invited response. I'm not going to raise this issue. You framed it the same way you framed it to us, correct, before the Nevada court? That's correct, Your Honor. And they resolved it against you. The fact that they didn't specifically mention it doesn't mean that they didn't consider it, does it? I think what it does mean, I think that there is a question in my mind about whether or not they resolved that. There were some issues about waiver that were in play, too. Those aren't issues that are before the Court today, those issues about waiver. So to me, it's unclear as to whether they did in fact consider that, even though they did mention it in their opinion. The only argument that I see is them mentioning the argument about the reference to other bad acts. Counsel, you don't have much time, and I guess my principal concern is whether there should have been a further interrogation of this child in a hearing to determine whether she was a competent witness. I'll move on to that issue. The other issue that's been raised by Mr. Finley is that he was denied his rights to confrontation under the Federal Constitution due to the fact that there was not a competency hearing that was ordered for the victim witness before she was allowed to testify. It's our contention that if you look closely at the original answers given by the victim about whether she knew the difference between true and false, that there's a substantial question that's raised about whether she could tell the difference between true and false. But again, we've got a finding by the Nevada Supreme Court in response to this very argument that she was a competent witness based on that same record. Don't we have to give substantial deference under EDPA to that determination on a matter of state law? I agree that the Nevada Supreme Court deserves deference, but that still I guess begs the question of what the record itself shows. And I think that the record shows Well, you've got to convince us that the, if you're, because it's in essence a mixed question of law and fact, you're going to have to convince us that by clear and convincing evidence that the Nevada Supreme Court erred in its factual determination. And then that they objectively and unreasonably applied Supreme Court precedent, which there is very little on child competency, that it was an unreasonable determination. That's a pretty steep hurdle to overcome. Well, there appear to be two questions raised by the Court. One is whether there's clearly established law. It's our contention that if you look at the Supreme Court's case law, they definitely mentioned that the oath itself is a precondition to confrontation. I'm aware that there's authority from this Court that talks about how memory loss and other issues that cause difficulty with a witness don't usually rise to the level of a confrontation issue. It's our contention, though, that when you're talking about the oath itself and the ability to tell what is true versus what is false, that that's an area where I believe that there is some clearly established law, specifically Marilyn v. Craig and the Court's precedents going backwards from there, United States v. Owens. Those cases all talk about the oath as a precondition to confrontation. And with that, so I was going to save some time. Yes. Thank you. Very well. We'll hear from the State. May it please the Court, Vic Schilse, Senior Deputy Attorney General in Las Vegas. If I could address the competency issue initially, I would point out that as we argued in our brief, the primary argument raised by Mr. Finley in his opening brief here in the appeal is that the competency issue was premised primarily on inconsistencies. They cited a lot of state court law. They cited a lot of circuit court law. They did not cite a U.S. Supreme Court case decision directly on point dealing with And so under the standard of 2254D, there is no U.S. Supreme Court case that the state court decision could have violated. Based on that, any reasonable action taken by the state court could not violate the standard of 2254D. Well, what's your response to his citation to Marilyn v. Craig and United States v. Owens? They're not directly on point. The primary case that they dealt with in their case was Davis v. Alaska. Like the other cases, Davis v. Alaska doesn't deal with the specific issues that we have on hand here. Well, does it have to deal with the specific issue? It's the principle of law that's important, not the specific facts of the case. According to Williams v. Taylor, I think you need more than just what I would consider generic confrontation cases, which is what they were able to find. Nobody, nobody, pardon me, nobody challenges the idea of the right to confront. But all they were able to find, in my view, was generic confrontation cases. What about the argument about the oath of being a precondition to being able to give valid testimony and allow confrontation? What's your response to that argument? I don't think it's a bad argument, but there's nothing here that shows the child violated her oath. If you look at the testimony given by the child, the first thing the prosecutor did was she went through the difference between lies and telling the truth. She established pretty clearly that the child understood the difference. She talked about what she was wearing, you know, would it be a lie if I said my pants, my skirt was blue, and the child, you know, they went through all that stuff. The child was adamant that Finley assaulted her. I would point something out that I think goes to show exactly how confident this child was. The prosecutor, it seems, was pretty intent on getting this kid to testify that there was oral copulation to support one of the other counts. Keep in mind, in this case, defense attorney got not guilty verdicts on two counts. Finley was only guilty of the one count of sexual assault. So not a bad job by the defense attorney in this case. But the prosecutor, Ms. Holthus in this case, seemed to be pretty intent on getting this child to say there was oral copulation. She asked the question four or five times. Did he try to put his private in your mouth? Didn't you tell the social worker he put his private in your mouth? The child would not deviate from her testimony that it did not occur, and the child was consistent. Isn't there on the record that she did say that there was copulation to one of the social workers? Your Honor, you're absolutely correct, and I'd point out that the prosecutor in closing argument conceded from the get-go in closing argument the child had made inconsistent statements to the social worker. That was, as Judge Rawlinson pointed out, that was argued by both sides. Both sides in front of the jury conceded that there were inconsistencies. The child's preliminary hearing transcript was admitted by stipulation of the two parties, as I recall from the record. There were inconsistencies. Both sides wanted it in. The prosecutor wanted it in to challenge her own witness, and, of course, the defense attorney wanted it in because the defense attorney's argument to the entire case was the child's inconsistent statements. But as Judge Rawlinson points out, all of that was placed in front of the jury factually. It was argued. The jury waited. As the State Supreme Court pointed out in the Evans case that we cited in our brief that overturned Felix, the State Supreme Court said as a matter of state law, and, again, we don't have any federal Supreme Court law on this issue, State Supreme Court said inconsistent testimony is not evidence of incompetency. It goes to wait. And I think Judge Rawlinson's right on point. The jury heard that, gave it whatever weight. That's why we have juries. And they gave it the weight they wanted to accord it. And two of those counts were not guilty. One count was guilty. But the evidence would have developed if they'd had a separate competency hearing in respect to the child's capacity. I think what you would have had is you would have had evidence that the child had made inconsistent statements. I would point out that adults make inconsistent statements. A stock jury instruction we give in Nevada is that juries have the right to disregard any evidence that they do not find credible. But inconsistencies are not evidence of lack of competence. And I think, Judge, if we'd had that hearing, we would have found out, as we did, that the child had made some inconsistent statements. But adults do that. I understand that. Why didn't the State ask for a competency hearing? It seems to me that you want to put on your suspenders as well as your belt. I think the strategic decision, according to the record, and I'm going out a little bit on a limb here, but near as I can tell from the record in this case, the prosecutor decided to deal with that issue as she did when the child first took the stand and deal with the issue specifically. And I suppose at some metaphorical level, that kind of was not an evidentiary hearing but an evidentiary canvas, if you will, the first couple of pages of the child's testimony. Do you know what it means to tell the truth? Is it good to tell the truth? Is it bad to tell a lie? What would happen if I said you're wearing, I'm paraphrasing, but if I said you were wearing green pants today? Would that be true or would that be a lie? And she went through all that. And I think prosecutors tend to do that to establish some baseline credibility with the jury. And I think based on the child's answer. If the state law requires a competency hearing, why wouldn't the state comply with that? Because it didn't at that point in time. What the state supreme court said in Evans' case was that Felix had been overturned because that rule on the requirement for competency hearings for kids under 10 had been overturned. It was a statute that had been overturned. And Evans came down about the exact same time that this direct appeal came down. And so the Felix case is no longer good law on that point. And so based on that, I think I agree with the judge that I think the state supreme court findings of, pardon me, of competency have to be upheld because there's no showing that the child was not competency. Again, based on the state law issue, that inconsistency is not enough. Very briefly, I've only got a few minutes left. Very briefly on the issue of prosecutorial misconduct, my position would be, first of all, that when you compare the complained of allegations to the facts of the Darden case, the primary case that's applied by the U.S. Supreme Court, the case, the case cited by the Nevada Supreme Court in their disposition that cited the De Cristoforo case, the statements, the most you can say, I think, about Ms. Holt, this is the prosecutor's statements in this case that are complained of, is that they were innocuous. I think some of them were fair commentary on the evidence. I would also point out the real, the tough, the toughest argument they raise is that she was bolstering the testimony of the child by saying, well, the child had made consistent statements. But she also told the jury that the child had made inconsistent statements. They were very clear on that. And it was the consistency and inconsistency of the child's statements that were argued primarily in both closing arguments by the defense attorney and by the State. Finally, if I could, on the Miranda issue, very briefly, the State court did hold an evidentiary hearing on the Miranda issue. There are three specific reasons why the issue fails. Number one, there was evidence that the complete Miranda warning was given. That came out by the police officer in the evidentiary hearing. That took... It's difficult for me to understand why the cops don't turn on the recorder until after they supposedly got the Miranda warning. Then they turn on the recorder. Judge, you know, if they asked me my opinion, I would instruct them the exact same way. I don't know. Someday we're going to pull them up short. Secondly, I am still not convinced that Finley was in custody for Miranda purposes. Keep in mind, Finley sent the prison kite to the memorandum to the cop, asking the cop to come and see him when he was in jail on other charges. And we know that from standard Miranda law, when it's the defendant who initiates contact with the police, that's a waiver. And that's true in cases where somebody's invoked their right to counsel. There is no evidence that he'd ever invoked his right to counsel. We have evidence that he was Mirandized, not sure that he was in custody at that point in time. When he asked the cops to come and see him to report his girlfriend's ex-husband, Mr. Lewis, and thirdly, he initiated the contact with the police. Based on that, we don't see the Miranda issue. If there are no more questions, that would conclude me. Thank you very much. Thank you very much. Mr. Anthony, you have a minute and a half. Very briefly, I'd like to respond to the arguments raised by the State. One of the arguments raised was the fact that the State law changed during the time of Mr. Finley's trial. It's our position that the question today isn't whether State law requires necessarily a competency hearing. The question here is whether there was a violation of the Federal Constitution. It's our position that the oath that a witness must take is a precondition to confrontation. But isn't it inherent in the Nevada Supreme Court's ruling that if a witness is competent to testify, then the witness must have understood the importance of taking the oath, because inherent in subscribing to the oath is the ability to understand truth from lie? Again, Your Honor, I think that the way I would respond to that is I would say that if you look at the record itself, specifically the questions where the child victim was asked about the oath, the first question she was asked was, do you understand what the clerk was saying about the oath? And she responded, no. And then she was asked, do you know the difference between telling the truth and telling a lie? And she responded again, no. So, again, you do have a finding by the Nevada Supreme Court, but it's still subject to what the record shows. But we have to read her whole testimony, not just the snippets that are favorable to one side or the other, do we not? And that's what the Nevada Supreme Court did. That's true, Your Honor. You do have to review the entire record. I think, though, that if you do review the entire record, I do think it shows that there are the problems that I've been mentioning. All right. Thank you very much, counsel. Your time has expired. Thank you. The case just argued is submitted.
judges: Fletcher B. , Tallman, Rawlinson